# EXHIBIT 1



1 | **THORPE SHWER, P.C.**
William L. Thorpe (No. 005641)
2 | André H. Merrett (020889)
Jamie Gill Santos (No. 026251)
3 | 3200 North Central Avenue
Suite 1560
4 | Phoenix, Arizona 85012-2441
Telephone: (602) 682-6100
5 | Email: wthorpe@thorpeshwer.com
Email: amerrett@thorpeshwer.com
6 | Email: jsantos@thorpeshwer.com
Email: docket@thorpeshwer.com
7 |
*Attorneys for Plaintiff TDBBS, LLC*

**COPY**

SEP 2 8 2018

COURT SEAL

CHRIS DEROSE, CLERK
S. HUGHES
DEPUTY CLERK

8 |

9 | **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

10 | **IN AND FOR THE COUNTY OF MARICOPA**

11 | TDBBS, LLC, a Delaware limited liability company,   |   Case No.:   CV 2 0 1 8 - 0 1 2 4 6 6

12 |

13 | Plaintiff,   |   **COMPLAINT**

14 | vs.   |   [Eligible for Commercial Court]

TIMOTHY FABITS, an Arizona individual,

15 | Defendant.

16 |

17 | Plaintiff TDBBS, LLC ("TDBBS"), by and through its undersigned counsel, brings this

18 | Complaint and Demand for Jury Trial ("Complaint") against Defendant Timothy Fabits

19 | ("Fabits"), and in support thereof alleges and states as follows:

20 | **INTRODUCTION**

21 | 1.   TDBBS seeks injunctive and other equitable relief and damages against

22 | Fabits, its former Vice President of Sales.

23 | 2.   Fabits was a senior executive of TDBBS, with extensive knowledge of

24 | and access to TDBBS's confidential and proprietary information and trade secrets.

25 | 3.   TDBBS has learned that, in the months leading up to the end of his

26 | employment, Fabits emailed to himself, at his personal Gmail account, numerous highly

27 | confidential TDBBS documents. Indeed, Fabits was doing so up until, literally, a few hours

28 | before the end of his very last day.

9051914

THORPE SHWER, P.C.

1       4.  To make matters worse, Fabits purposefully delayed, for months,

2   returning his TDBBS-issued laptop – a laptop that Fabits used to access TDBBS's confidential

3   information and trade secrets.  Fabits, moreover, has still failed to return the confidential

4   information that he misappropriated from TDBBS.

5       5.  Moreover, upon information and belief, Fabits is now working for a

6   company that sells products which compete with TDBBS's products.

7       6.  TDBBS, therefore, seeks an order from this Court for the return of its

8   confidential information and trade secrets, as well as damages for the harm caused by Fabits's

9   ongoing illegal conduct.

10      **THE PARTIES, JURISDICTION, VENUE, and DAMAGE TIER**

11      7.  TDBBS is a Delaware limited liability company, with its principal place

12  of business located in Henrico, Virginia.

13      8.  Fabits is a citizen of Arizona, residing in Buckeye, Arizona.

14      9.  This Court's exercise of jurisdiction over the parties to this action is

15  proper.

16      10.  This Court has jurisdiction over the subject matter of this action pursuant

17  to the Arizona Constitution, Art. 6, Sec. 14 and A.R.S. § 12-123.

18      11.  Venue is proper pursuant to A.R.S. § 12-401.

19      12.  The damages sought in this action are such as to qualify for Tier 2 under

20  Ariz. R. Civ. P. 26.2(c)(3).

21      **GENERAL ALLEGATIONS**

22      **TDBBS's Business, Confidential Information, and Trade Secrets.**

23      13.  TDBBS is a pet chew and treats business that specializes in formulating,

24  sourcing, manufacturing, distributing, marketing, and selling natural pet treats and chews

25  throughout the United States and abroad.

26      14.  TDBBS sources ingredients globally, and sells its products online (both

27  direct-to-consumer and through third-party platforms), through pet specialty retailers, and

28  through mass market and club retailers.

9051914

15.  TDBBS's relationships with customers, distributors, suppliers, and other vendors are critical to its success in the growing and competitive pet treat and chew segment of the pet food market.

16.  TDBBS has developed and maintains a substantial amount of trade secrets and confidential and proprietary information, including but not limited to: business plans; pricing, marketing, and distribution strategies; product, branding, packaging, and advertising development; brand portfolio strategies; vendor/supplier relationships; global supply chain; customer lists and preferences; business partner relationships and agreements; discount structures; channel development; personnel; product formulas; and intellectual property ("Confidential Information").

17.  TDBBS's Confidential Information was developed over many years, with a substantial investment of labor, skill, money, and knowledge gained from experiences with customers, vendors/suppliers, and government boards and agencies, among others.

18.  TDBBS's Confidential Information is highly valuable, not generally known outside of TDBBS, and would be of significant value to TDBBS's competitors if known by them.  TDBBS derives a competitive advantage and independent economic value, both actual and potential, from its Confidential Information, because the Confidential Information is not generally known to the public or to others who can obtain economic value from its disclosure or use.

19.  Consequently, TDBBS takes extensive measures to preserve the secrecy of its Confidential Information, including but not limited to: requiring employees to sign confidentiality agreements; requiring employees to read and sign an acknowledgment of a handbook that includes TDBBS's confidentiality policy; and employing physical and electronic security measures, including locked offices and filing cabinets and password protected access to TDBBS's computer systems and databases.

. . .

. . .

. . .

3

9051914

THORPE SHWER, P.C.

**TDBBS Hires Fabits as a Vice President of Sales.**

20.     On or about March 16, 2017, TDBBS hired Fabits to be its Vice President of Sales, responsible for the Barkworthies independent pet channel, with a start date of May 1, 2017.

21.     Shortly after he was hired, Fabits's role expanded to include responsibility for TDBBS's entire sales organization.

22.     Except when he was traveling on TDBBS business, Fabits worked from his home in Arizona.

**Fabits Acknowledges TDBBS's Confidential Information Policy.**

23.     On May 1, 2017, Fabits signed a Receipt of Employee Handbook, acknowledging that, "you have received a copy of the TDBBS Employee Handbook and understand that it is your responsibility to read and comply with the policies contained therein and any revisions made to it." See Exhibit A hereto.

24.     Shortly after Fabits began his employment, TDBBS issued a revised Employee Handbook. Consequently, on July 20, 2017, Fabits signed a new Receipt and Acknowledgment of the Employee Handbook, similarly acknowledging that, "you have received a copy of the TDBBS Employee Handbook and understand that it is your responsibility to read and comply with the policies contained therein and any revisions made to it." See Exhibit B hereto.

25.     The Employee Handbook contained a policy on "Confidential Information, Trade Secrets, and Intellectual Property" (the "Confidential Information Policy"). See Exhibit C hereto.

26.     The Confidential Information Policy provided, in part:

> The protection of confidential business information, intellectual property and trade secrets is vital to the interests and the success of TDBBS. Trade secrets may include information regarding the development of systems, processes, products, know-how, and technology. Intellectual property may include, but is not limited to, assignment of inventions, patent and copyright information, and trademarks. Confidential business information includes, but is not limited to: (1) customer lists, (2) price lists and financial information (not including non-managerial compensation or wage

4

9051914

information), (3) marketing strategies, (4) new material research, (5) pending projects and proposals, and (6) research and development strategies.

Any Employee who discloses trade secrets or confidential business information to individuals not employed by TDBBS or to any individuals who do not have a legitimate and authorized need or request to know such information, will be subject to appropriate disciplinary action, up to and including termination of employment. Further, Employees' obligations not to disclose trade secrets or confidential business information continues after employment ends[.]

Exhibit C.

### TDBBS Provides Fabits With a Laptop for Company Business.

27.     TDBBS provided Fabits with an Apple MacBook laptop (the "Laptop") for his use in carrying out TDBBS business.

28.     Fabits used the Laptop for, among other purposes, sending and receiving emails concerning TDBBS's business, including emails that contained TDBBS's Confidential Information.

### Fabits Becomes Hostile to TDBBS After the Sales Department is Restructured.

29.     In the Spring of 2018, TDBBS decided to restructure its sales department. As part of that restructuring, TDBBS planned to hire a new Vice President who would be responsible for company-wide sales. Fabits would then report to the new Vice President, rather than to the Chief Executive Officer, and his focus would return to the Barkworthies independent pet channel.

30.     TDBBS decided also to restructure Fabits's compensation to be more performance based. Under the new structure, a larger portion of Fabits's compensation would be through a performance-based bonus, which would afford Fabits the opportunity to earn more money than was possible under his initial compensation structure.

31.     On April 23, 2018, Fabits spoke by phone with TDBBS's Human Resources Director. Fabits expressed his unhappiness with his restructured position and compensation, and with TDBBS in general.

5

9051914

THORPE SHWER, P.C.

1           32.    Fabits went even further during this call; he made numerous threats to

2   disparage and otherwise harm TDBBS, including but not limited to the following: "I will bust

3   ass to disrupt everything"; "I will bring the house down"; "I will do whatever it takes to

4   protect my family"; "This is going to get ugly."

5           33.    On or about April 25, 2018, TDBBS issued an updated Employee

6   Handbook, which again contained the Confidential Information Policy.

7           34.    TDBBS directed its employees, including Fabits, to sign an

8   acknowledgment form for the revised Handbook. Fabits refused to do so despite having done

9   so twice in the past.

10          35.    On April 30, 2018, TDBBS's new Vice President of Sales started his

11   employment. From and after that date, Fabits reported to the new Vice President of Sales.

12          36.    On May 2, 2018, the new Vice President of Sales led his first scheduled

13   conference call with the entire sales team; Fabits failed to join the call.

14          37.    Later that same day, Fabits was supposed to join in a two-hour

15   management meeting. He never called in for that meeting, either.

16          38.    The new Vice President of Sales finally was able to reach Fabits by phone

17   on May 3, 2018. Fabits spent the first ten minutes of the call expressing his displeasure with

18   TDBBS.

19          39.    Fabits stated also that he thought TDBBS might no longer be a good fit

20   for him, and that he needed to reevaluate his relationship with TDBBS.

21          40.    In the weeks that followed, Fabits continued to express negative views of,

22   and threats toward, TDBBS. For example, Fabits told members of the sales team that: "every

23   minute I am not doing something I am thinking about how to bring the house down"; he was

24   trying to "undo the work" he had done at TDBBS; and he and another TDBBS employee were

25   going to the SuperZoo trade show to "look for work and an opportunity to stick it to TDBBS."

26          41.    In addition, Fabits missed several weekly sales calls, and members of the

27   sales team reported that Fabits was "checked out."

28

6

9051914

THORPE SHWER, P.C.

42. Matters came to a head on May 30, 2018. During a telephone call with Fabits, the new Vice President of Sales asked Fabits to provide certain information regarding sales activities; Fabits refused to do so. Fabits was told that it was his duty, as an employee of TDBBS, to provide the requested information. Fabits replied that he did not care.

43. Fabits stated also that he would "undo everything I have done in the past year," and would "be coming at the company with all I have."

44. Later that same day, TDBBS's Human Resources Director spoke with Fabits and asked if he was resigning. Fabits answered, "no," but stated also that he saw no reason to remain at TDBBS.

45. Given Fabits's ongoing unprofessional and hostile attitude and behavior, TDBBS, on May 31, 2018, told Fabits that he could stay on for another two weeks if he would commit to acting in a professional manner and assisting with any necessary transitions; otherwise, he would need to leave immediately.

46. Fabits did not respond to TDBBS's offer to stay on for the additional two weeks. Consequently, Fabits's employment with TDBBS ended on May 31, 2018.

**Fabits Secretly Forwards Confidential Information to his Personal Gmail.**

47. TDBBS has learned also that, for months leading up to the end of his employment, Fabits was misappropriating TDBBS's Confidential Information.

48. As a Vice President of Sales, Fabits received extensive product, performance, and financial data concerning TDBBS, which was highly confidential and would be of significant value to TDBBS's competitors.

49. For example, Fabits periodically received "lost revenue" reports, which contained detailed information showing, by product and customer, any quantity differences between amounts ordered and amounts shipped.

50. It appears now that, on several occasions, Fabits emailed these lost revenue reports from his TDBBS company email to his personal Gmail account, usually within hours of receiving them. See Exhibit D hereto.

7

9051914

THORPE SHWER, P.C.

51.    Fabits's misappropriation continued until literally the last few hours of his employment with TDBBS.   At 3:32 p.m. on his last day, Fabits sent an email to a member of the sales team requesting, "the latest Master."

52.    The "Master" referred to was the confidential master product information spreadsheet for TDBBS's Barkworthies line, which contained extensive data on every Barkworthies' product, including detailed information on pricing tiers.

53.    As requested, the member of TDBBS's sales team forwarded the Master spreadsheet to Fabits at his TDBBS email.

54.    Fabits then immediately forwarded the Master spreadsheet to his Gmail account. See Exhibit E hereto.

55.    The information in the lost revenue reports and the Master spreadsheet is highly confidential.   These reports and spreadsheets, and the information they contain, are not disclosed outside of TDBBS and, even within TDBBS, their distribution is limited to specific individuals who have a particular TDBBS business need for them.

56.    The information in these reports and spreadsheets would, moreover, be highly valuable to TDBBS's competitors, enabling them adjust their pricing and business strategies to unfairly compete with TDBBS.

57.    There was no possible TDBBS business reason for Fabits to be forwarding lost revenue reports and the Master spreadsheet to his personal Gmail account at all, let alone forwarding the Master spreadsheet in the final two hours of his employment, when he had no duties left to perform for TDBBS.

**Fabits Delays Returning the Laptop, and Fails to Return TDBBS's Confidential Information.**

58.    On June 1, 2018, TDBBS emailed Fabits a prepaid UPS shipping label for returning the Laptop.

59.    For months thereafter, and despite repeated demands from TDBBS, Fabits failed and refused to return the Laptop, offering a variety of alleged "excuses," including claims that: he never received the shipping label; he was on vacation (for the entire

8

9051914

1  summer); he was traveling on business; he would not bring the Laptop to a UPS store only five

2  miles from his house; and TDBBS had not provided him with packing supplies (even though

3  TDBBS had agreed to reimburse him for any such supplies).

4      60.    Finally, in mid-September 2018, Fabits agreed to meet a TDBBS sales

5  representative at his house and to deliver the Laptop to that sales representative.

6      61.    Fabits gave the Laptop to the TDBBS sales representative on Saturday,

7  September 22.

8      62.    Fabits also has failed and refused, despite repeated demands by TDBBS,

9  to return TDBBS's Confidential Information.

#### Fabits Joins Another Pet Products Company.

11     63.    On information and belief, Fabits is now employed by Ethical Products,

12  Inc. d/b/a Ethical Pet ("Ethical Pet").

13     64.    Ethical Pet sells a line of all-natural dog treats, marketed under the

14  Beastie Bar and Healthy Balance brands, that competes with products sold by TDBBS.

### Count I
#### Violation of Defend Trade Secrets Act, 18 U.S.C. §1836

17     65.    TDBBS incorporates the allegations set forth in the preceding paragraphs

18  as if set forth in full herein.

19     66.    TDBBS's Confidential Information constitutes trade secrets within the

20  meaning of the Defend Trade Secrets Act, 18 U.S.C. §1836.

21     67.    TDBBS is headquartered in Virginia, but regularly transacts business in

22  states other than Virginia, including in person and by phone, internet, and mail.  TDBBS's

23  trade secrets relate to this business and, thus, are frequently used by TDBBS in interstate

24  commerce.

25     68.    Fabits acquired TDBBS's trade secrets by improper means, including but

26  not limited to receiving and using TDBBS's trade secrets while violating his fiduciary duties

27  to TDBBS; emailing Confidential Information to his personal email account, despite having no

28  possible TDBBS business reason for doing so; substantially delaying his return of the Laptop,

9

THORPE SHWER, P.C.

THORPE SHWER, P.C.

1 and failing and refusing to return the Confidential Information to TDBBS in breach of his

2 obligations to do so, which constitutes theft.

3         69.   Fabits's acts of misappropriation were willful and malicious.

4         70.   As a direct and proximate result of Fabits's acts of misappropriation,

5 TDBBS has suffered and will suffer irreparable harm and damages. Moreover, Fabits has

6 gained an unfair competitive advantage and other unjust enrichment through the

7 misappropriation of TDBBS's trade secrets.

8         71.   TDBBS is entitled to injunctive relief against Fabits to prohibit his actual

9 and/or threatened misappropriation of TDBBS's trade secrets.

10         72.   TDBBS is entitled to and requests an award of damages in its favor for

11 actual loss caused by the misappropriation, damages for all unjust enrichment caused by the

12 misappropriation that is not addressed in computing damages for actual loss, and/or damages

13 measured by imposition of liability for a reasonable royalty.

14         73.   As a result of Fabits's willful and malicious misappropriation, TDBBS is

15 entitled to and requests exemplary damages in an amount not more than two times TDBBS's

16 actual damages, plus reasonable attorneys' fees.

17                                **Count II**

   **Violation of the Arizona Uniform Trade Secrets Act, A.R.S. §44-401 et seq.**

18

19         74.   TDBBS incorporates the allegations set forth in the preceding paragraphs

20 as if set forth in full herein.

21         75.   TDBBS's Confidential Information constitutes trade secrets within the

22 meaning of the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. §44-401 et seq.

23         76.   Fabits acquired TDBBS's trade secrets by improper means, including but

24 not limited to receiving and using TDBBS's trade secrets while violating his fiduciary duties

25 to TDBBS; emailing Confidential Information to his personal email account, despite having no

26 possible TDBBS business reason for doing so; substantially delaying his return of the Laptop,

27 and failing and refusing to return the Confidential Information to TDBBS in breach of his

28 obligations to do so, which constitutes theft.

9051914

1      77.     Fabits's acts of misappropriation were willful and malicious.

2      78.     As a direct and proximate result of Fabits's acts of misappropriation,
3   TDBBS has suffered and will suffer irreparable harm and damages.  Moreover, Fabits has
4   gained an unfair competitive advantage and other unjust enrichment through the
5   misappropriation of TDBBS's trade secrets.

6      79.     TDBBS is entitled to injunctive relief against Fabits to prohibit his actual
7   and/or threatened misappropriation of TDBBS's trade secrets.

8      80.     TDBBS is entitled to an award of damages in its favor for actual loss
9   caused by the misappropriation, damages for all unjust enrichment caused by the
10  misappropriation that is not addressed in computing damages for actual loss, and/or damages
11  measured by imposition of liability for a reasonable royalty.

12     81.     As a result of Fabits's willful and malicious misappropriation, TDBBS is
13  entitled to and requests exemplary damages in an amount not more than two times TDBBS's
14  actual damages, plus reasonable attorneys' fees.

### Count III
### Breach of Fiduciary Duty

17     82.     TDBBS incorporates the allegations set forth in the preceding paragraphs
18  as if set forth in full herein.

19     83.     As an employee and executive of TDBBS, Fabits owed TDBBS a
20  fiduciary duty, including duties of loyalty and due care.

21     84.     Fabits's duties of loyalty and due care to TDBBS include, without
22  limitation, duties: not to act in opposition to TDBBS's interests; not to use his position with
23  TDBBS for personal gain at the expense of TDBBS; not to use TDBBS's property and
24  information, including but not limited to the Laptop and the Confidential Information, for his
25  own purpose or for the purpose of any third party; and not to misappropriate TDBBS's trade
26  secrets.

THORPE SHWER, P.C.

11

9051914

THORPE SHWER, P.C.

85.   Fabits's fiduciary duty not to use or disclose TDBBS's property, including but not limited to the Laptop and the Confidential Information, for his own benefit or the benefit of a third party continued after the conclusion of his employment with TDBBS.

86.   By virtue of the conduct alleged herein, Fabits breached his fiduciary duties to TDBBS.

87.   TDBBS has suffered damages as a direct and proximate result of Fabits's breaches of fiduciary duty.

88.   Fabits's actions as alleged herein were undertaken with the intent to injure TDBBS, and/or with deliberate indifference to TDBBS's rights, and/or with conscious disregard of the unjustifiably substantial risk of significant harm to TDBBS, thus entitling TDBBS to an award of punitive damages.

## Count IV
## Injunctive Relief

89.   TDBBS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

90.   Pursuant to DTSA, 18 U.S.C. §1836(b)(3)(A), and AUTSA, A.R.S. §44-402, TDBBS is entitled to an injunction preventing any actual or threatened misappropriation of its trade secrets by Fabits and/or his agents, and other persons who are in active concert or participation with them (collectively, "Covered Persons").

91.   This injunctive relief should include, without limitation, an Order prohibiting the Covered Persons from using or disclosing any of TDBBS's trade secrets, including but not limited to its Confidential Information, in any manner.   Further, the injunctive relief should include an Order requiring the Covered Persons to return to TDBBS, and not keep, any and all trade secrets of TDBBS, including but not limited to any Confidential Information; and requiring Fabits to certify under oath that all Confidential Information has been returned and not kept.

92.   TDBBS has a substantial likelihood of prevailing on the merits of its claims.

12

93.     Unless the Covered Persons are enjoined from the conduct described herein, there is a substantial threat that TDBBS will continue to suffer irreparable harm, including loss and misuse of its Confidential Information, and financial losses that are presently not calculable.

94.     The irreparable harm that TDBBS will suffer if injunctive relief is denied outweighs the potential harm (if any) to Fabits if injunctive relief is granted.

95.     Granting the requested injunctive relief will not disserve the public interest.

96.     TDBBS has no adequate remedy at law.

97.     Consequently, TDBBS is entitled to injunctive relief as set forth herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff TDBBS, LLC respectfully requests judgment in its favor against Defendant Timothy Fabits as follows:

1.      Awarding TDBBS damages in an amount to be proven at trial, but not less than the amount in controversy required to invoke the jurisdiction of this Court;

2.      Awarding TDBBS punitive damages in an amount sufficient to punish Fabits for the conduct alleged herein and to deter others from engaging in similar conduct;

3.      Awarding TDBBS the attorneys' fees and costs incurred in bringing this action;

4.      Awarding interest on the foregoing sums at the highest rate permitted by law from the date of judgment until paid;

5.      Entering an injunction, ordering that Fabits, his agents, servants, employees, representatives, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, "Covered Persons"):

        (a)     are restrained and enjoined from, directly or indirectly, disclosing or making any use of any trade secrets, confidential information, knowledge, data or other information of TDBBS, including but not limited to business plans; pricing, marketing, and distribution strategies; product, branding, packaging, and advertising development; brand

13

THORPE SHWER, P.C.

9051914

1    portfolio strategies; vendor/supplier relationships; global supply chain; customer lists and

2    preferences; business partner relationships and agreements; discount structures; channel

3    development; personnel; product formulas; and intellectual property ("Confidential

4    Information");

5                 (b)     must return to TDBBS any Confidential Information that is in his

6    possession, custody, or control (including but not limited to Confidential Information in paper

7    form and in electronic form, wherever and however stored, including but not limited to

8    personal computers, cloud storage, external storage media, smart phones and other handheld

9    devices, and email accounts, including but not limited to Fabits's personal Gmail account) and

10    to the extent that any such information is maintained in electronic form must, after such

11    information is returned to TDBBS, purge or destroy any electronic record of such information

12    in a manner that does not allow the Confidential Information to be retrieved or restored; and

13                 (c)     must certify to TDBBS, under oath, that the Confidential

14    Information has been thus returned and purged or destroyed; and

15             6.     Awarding TDBBS such other and further relief as the Court deems

16    proper.

17

18    Dated this _____ day of September, 2018.

19                               THORPE SHWER, P.C.

20

21                               William Thorpe

22                               André H. Merrett

23                               Jamie Gill Santos
                                 *Attorneys for Plaintiff*

24

25

26

27

28

THORPE SHWER, P.C.

14

9051914

# EXHIBIT A

## Receipt of Employee Handbook

The Employee Handbook, or Handbook, is a compilation of personnel policies, practices and procedures currently in effect at Best Bully Sticks. TDBBS is an Equal Opportunity Employer.

This Handbook is designed to introduce Employees to the organization, familiarize you with Company policies as they pertain to you as an Employee, provide general guidelines on work rules, disciplinary procedures and other issues related to your employment, and to help answer many of the questions that may arise in connection with your employment. This Handbook and any other provisions contained herein do not constitute a guarantee of employment or an employment contract, express or implied. You understand that your employment is "at-will" and that your employment may be terminated for any reason, with or without cause, and with or without notice. Only authorized representative(s) of the Company have the authority to enter into a signed, written agreement guaranteeing employment for a specific term. This Handbook is intended solely to describe the present policies and working conditions at the Company. This Handbook does not claim to include every conceivable situation; it is merely meant as a guideline. Federal, state, and/or local laws will take precedence over Company policies, where applicable.

Personnel policies are applied at the discretion of Management. In addition, the Company reserves the rights to change, withdraw, apply, or amend any of our policies or benefits, including those covered in this Handbook, at any time. The Company may notify you of such changes via a printed memo, notice, amendment to or reprinting of this Handbook, or by another reasonable means, but may, in its discretion make such changes at any time, with or without notice and without a written revision of this Handbook.

This Handbook replaces all previous TDBBS handbooks, guides, and supplements that have been published prior to February 2016.

By signing below, you acknowledge that you have received a copy of the TDBBS Employee Handbook and understand that it is your responsibility to read and comply with the policies contained therein and any revisions made to it. Furthermore, you acknowledge that you are employed "at-will" and that this Handbook is neither a contract of employment nor a legal document.

_____        _5. 1 /17_____
Signature                                      Date

_Timothy P. Fabris_
Please print your full name

# EXHIBIT B

<u>Receipt and Acknowledgement of the Employee Handbook</u>

The Employee Handbook, or Handbook, is a compilation of personnel policies, practices and procedures currently in effect at TDBBS, LLC.  TDBBS is an Equal Opportunity Employer.

This Handbook is designed to introduce Employees to the organization, familiarize you with Company policies as they pertain to you as an Employee, provide general guidelines on work rules, disciplinary procedures and other issues related to your employment, and to help answer many of the questions that may arise in connection with your employment. This Handbook and any other provisions contained herein do not constitute a guarantee of employment or an employment contract, express or implied.  You understand that your employment is "at-will" and that your employment may be terminated for any reason, with or without cause, and with or without notice.  Only authorized representative(s) of the Company have the authority to enter into a signed, written agreement guaranteeing employment for a specific term.  This Handbook is intended solely to describe the present policies and working conditions at the Company.  This Handbook does not claim to include every conceivable situation; it is merely meant as a guideline. Federal, state, and/or local laws will take precedence over Company policies, where applicable.

Personnel policies are applied at the discretion of Management. In addition, the Company reserves the rights to change, withdraw, apply, or amend any of our policies or benefits, including those covered in this Handbook, at any time. The Company may notify you of such changes via a printed memo, notice, amendment to or reprinting of this Handbook, or by another reasonable means, but may, in its discretion make such changes at any time, with or without notice and without a written revision of this Handbook.

This Handbook replaces all previous TDBBS handbooks, guides, and supplements that have been published prior to July 2017.

By signing below, you acknowledge that you have received a copy of the TDBBS Employee Handbook and understand that it is your responsibility to read and comply with the policies contained therein and any revisions made to it.  Furthermore, you acknowledge that you are employed "at-will" and that this Handbook is neither a contract of employment nor a legal document.


| _____ | 7/20/2017 _____ |
| Signature | Date |

Timothy Fabits
_____
Employee Name (Print)

TDBBS -Confidential & Proprietary            Revised - July 2017

# EXHIBIT C

- Excessive absenteeism, tardiness, sleeping, or malingering on the job;
- Failure to cooperate in a TDBBS investigation.

Notwithstanding this list, employment with TDBBS is at the mutual consent of TDBBS and the Employee, and either party may terminate that relationship at any time, with or without cause or advanced notice.

Protection of Company Assets

Employees should protect TDBBS assets and ensure their proper use. Funds and assets of TDBBS, both tangible and intangible, must be used only for legitimate business purposes of TDBBS and only by authorized Employees or consultants. Intangible assets include intellectual property such as trade secrets, patents, trademarks, copyrights, business, marketing, sales, and service plans, TDBBS records, salary information, and any unpublished financial data and reports. Unauthorized altercation, destruction, use, disclosure, distribution, or disposal of TDBBS assets violates this Code. Employees should protect and ensure efficient use of TDBBS assets. The theft and waste of TDBBS assets have a direct impact on TDBBS profitability, and all TDBBS assets should only be used for legitimate business purposes.

Confidential Information, Trade Secrets, Intellectual Property

The protection of confidential business information, intellectual property and trade secrets is vital to the interests and the success of TDBBS. Trade secrets may include information regarding the development of systems, processes, products, know-how, and technology.  Intellectual property may include, but is not limited to, assignment of inventions, patent and copyright information, and trademarks.  Confidential business information includes, but is not limited to: (1) customer lists, (2) price lists and financial information (not including non-managerial compensation or wage information), (3) marketing strategies, (4) new material research, (5) pending projects and proposals, and (6) research and development strategies.

Any Employee who discloses trade secrets or confidential business information to individuals not employed by TDBBS or to any individuals who do not have a legitimate and authorized need or request to know such information, will be subject to appropriate disciplinary action, up to and including termination of employment. Further, Employees' obligations not to disclose trade secrets or confidential business information continues after employment ends, although an Employee is not prohibited from reporting possible violations of federal law or regulation to any government agency or self-regulatory organization or making disclosures that are protected under the whistleblower provisions of federal law regulation. In accordance with the Defend Trade Secrets Act of 2016, an Employee will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law, or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

TDBBS is engaged in business which requires that a strict code of confidentiality of information be maintained. No Employee will store information outside of the Company (either in written or electronic form) about any matter pertaining to the conduct of the Company's business. No information regarding any customer information (i.e. name, financial information, etc.) or pricing structures shall be given to any customer, competitor, or vendor without proper manager authorization. No information regarding selling prices to one customer, or vendor shall be given to another customer or vendor.

In addition, idle gossip or unauthorized dissemination of confidential information within the Company, such as personal information, financial information, etc. is prohibited.

Compliance with these standards of business ethics, conduct and appropriately handling of proprietary and confidential information is the responsibility of every one of our Employees. Disregarding or failing to comply with this comprehensive policy could lead to disciplinary action, up to and including possible termination of employment.

<u>Conflict of Interest Prohibited</u>

Employees must maintain the highest of ethical standards in the conduct of TDBBS affairs. Thus, Employees should avoid any situation which involves or may involve a conflict between their personal interests and the interests of the Company. Employees are required to avoid any relationship with other individuals or organizations that might impair or appear to impair, the proper performance of their TDBBS-related responsibilities. Employees must act in the best interest of the Company when dealing with customers, contractors, competitors, or any other person doing or seeking to do business with the Company. Employees must make full and prompt disclosure in writing to the CEO or Human Resources, of any potential situation that may involve a conflict of interest. Such conflicts include, but are not limited to, the following examples:

- Ownership by an Employee or by a member of his/her family of an interest in any outside enterprise which does or seeks to do business with or is a competitor of TDBBS. Employees should notify Human Resources of any such potential conflict and refrain from such activity until the conflict situation has been reviewed by TDBBS' CEO or General Counsel.
- Serving as a Director, Officer, Partner, Consultant, or in a Managerial or technical capacity with an outside enterprise which does or is seeking to do business with or who is a competitor of the Company.
- Employees have a full-time and continuing duty of loyalty to TDBBS and must avoid activities and relationships that are incompatible with their employment to the Company. Among other things, an Employee may not have any employment, financial interest, consulting, or other business relationship with a competitor, customer, or invest in any competitor unless advance written permission of TDBBS has been obtained. No Employee may (a) take for him/herself personal opportunities that are discovered through use of Company property, information, or position; (b) use Company property, information, or position for personal gain; or (c) compete with the Company. Employees have a duty to the Company to advance its legitimate interests when the opportunity arises.
- Outside employment may constitute a conflict of interest if it places an Employee in a position of appearing to represent the Company, involves providing, manufacturing, or distributing goods similar to those of the Company, or that the company is considering making available, or lessens the efficiency, productivity, alertness, engagement, or productivity expected of Employees to do their jobs. All such outside employment must be approved in advance by the CEO or General Counsel. Outside employment or compensated activity must not be performed at the same time the Employee is supposed to be performing his or her duties for the Company or is also being compensated by the Company and must not be performed on the Company's premises or involve the use of the Company's property, equipment, supplies, networks, facilities (e.g. telephones, modems or internet access), other Company owned resources.
- Employees may have affiliations outside of the Company but must not enter into relationships which may suggest a conflict of interest with TDBBS. A conflict of interest exists whenever an Employee's loyalty to the Company could be affected by an actual or potential personal benefit to the Employee or a family member from another source. Without limiting the foregoing, no

# EXHIBIT D

| | |
|---|---|
| **From:** | Tim Fabits |
| **To:** | Tim Fabits |
| **Subject:** | Fwd: REDACTED pick up 3/27 |
| **Date:** | Tuesday, March 27, 2018 9:57:51 PM |
| **Attachments:** | Lost Revenue by Item (2018-03-27).xlsx |
| | ATT00001.htm |

Kind regards,


Tim Fabits
Barkworthies ®
C: REDACTED
tfabits@barkworthies.com

Begin forwarded message:

> **From:** "Lara Muller" <lmuller@barkworthies.com>
> **To:** "Tim Fabits" <tfabits@barkworthies.com>
> **Cc:** "Sandy Hobson" <shobson@barkworthies.com>
> **Subject: Re:** REDACTED **pick up 3/27**
>
> Hi Tim,
>
> Attached is a lost revenue report done from 01/17-present, as well as divided by month. For quick review, the first tab has a breakdown of lost revenue, while the tabs have specific details on losses. This is still a rough look, as there might be some discontinued items included, but I can continue to polish it. There is another way to get this information, which will include a breakdown by customer, rather than item. I'm going to do a quick report tomorrow to pitch numbers against one another, and confirm accuracy. Just let me know if you need me to tweak this, or get you anything else!
>
> Lara
>
> **From:** Tim Fabits <tfabits@barkworthies.com>
> **Date:** Tuesday, March 27, 2018 at 4:36 PM
> **To:** Lara Muller <lmuller@barkworthies.com>
> **Cc:** Sandy Hobson <shobson@barkworthies.com>
> **Subject:** Re: REDACTED pick up 3/27
>
> Thanks, Lara!

| | |
|---|---|
| **From:** | Tim Fabits |
| **To:** | Tim Fabits |
| **Subject:** | Fwd: March Lost Revenue |
| **Date:** | Monday, April 02, 2018 4:04:07 PM |
| **Attachments:** | March.xlsx |
| | ATT00001.htm |

Kind regards,


Tim Fabits
Barkworthies ®
C: REDACTED
tfabits@barkworthies.com

Begin forwarded message:

> **Resent-From:** <tfabits@barkworthies.com>
> **From:** Lara Muller <lmuller@tdbbsllc.com>
> **Date:** April 2, 2018 at 12:37:15 PM MST
> **To:** Tim Fabits <tfabits@barkworthies.com>, Sandy Hobson
> <shobson@barkworthies.com>
> **Subject: March Lost Revenue**
>
> Hi Tim and Sandy,
>
> Attached is the lost sales, divided by customer, for March. I separated them out into
> different channels, and left the dates/order numbers included to help review within a
> specific customer. Please let me know if you would like any changes, or modifications,
> in this report.
>
> Lara

| From: | Tim Fabits |
|-------|-----------|
| To: | Tim Fabits |
| Subject: | Fwd: April Sales |
| Date: | Thursday, April 19, 2018 1:35:22 PM |
| Attachments: | Lost Revenue April.xlsx |
| | ATT00001.htm |

Kind regards,

Tim Fabits
Barkworthies ®
C: REDACTED

Begin forwarded message:

> **From:** Lara Muller <lmuller@barkworthies.com>
> **Date:** April 19, 2018 at 11:10:18 AM CDT
> **To:** Tim Fabits <tfabits@barkworthies.com>
> **Subject: Re: April Sales**
>
> Hi Tim,
>
> Attached is the lost revenue report for April – as a breakdown,
>
> $REDACTED total on report
> $REDACTED once OFBULLY6DB30 is removed (disco'd)
> $REDACTED of lost revenue is from new products – removing their totals the lost revenue
> is adjusted to $REDACTED
>
> Let me know if I can get you anything else,
>
> Lara
>
>
> **From:** Tim Fabits <tfabits@barkworthies.com>
> **Date:** Wednesday, April 18, 2018 at 1:08 PM
> **To:** Lara Muller <lmuller@barkworthies.com>
> **Subject:** Fwd: April Sales
>
> Hey Lara,
>  Can you provide the MTD lost revenue total for April? I just need a quick total. Thanks.
>
> Kind regards,

# EXHIBIT E

| | |
|---|---|
| **From:** | Tim Fabits |
| **To:** | Tim Fabits |
| **Subject:** | FW: Master Spreadsheet |
| **Date:** | Thursday, May 31, 2018 3:35:57 PM |
| **Attachments:** | Barworthies Master Spreadsheet_June2018.xlsx |

**From:** Katherine Morrison <kmorrison@barkworthies.com>
**Date:** Thursday, May 31, 2018 at 12:35 PM
**To:** Tim Fabits <tfabits@barkworthies.com>
**Subject:** RE: Master Spreadsheet

Here ya go, please note, the remaining 2 Display Box skus were officially disco'd yesterday. This is why the Master is titled "June", and I'm about to share it with the team along with the updated pricelists where these two skus have been removed, as well.

Thanks,

Katherine Morrison
Barkworthies ®
Brand Strategy / Execution Liaison
540.270.5255
kmorrison@barkworthies.com

**From:** Tim Fabits
**Sent:** Thursday, May 31, 2018 3:32 PM
**To:** Katherine Morrison <kmorrison@barkworthies.com>
**Subject:** Re: Master Spreadsheet

Kat,
Can you forward the latest Master? Thanks.

**From:** Katherine Morrison <kmorrison@barkworthies.com>
**Date:** Monday, April 30, 2018 at 2:09 PM
**To:** Tim Fabits <tfabits@barkworthies.com>
**Cc:** Spencer Duncan <sduncan@barkworthies.com>
**Subject:** RE: Master Spreadsheet

Hi Tim,
Of course! I've been in touch with Spencer, and I'll ensure I share it with the entire team.

Thanks,

Katherine Morrison

# EXHIBIT 2

FILED
10-10-18 5:00pm
CHRIS DEROSE, Clerk
By E. Vazquez
E. Vazquez, Deputy

CHRIS DEROSE, Clerk
RECEIVED/CCB #2
DOCUMENT REPOSITORY

## In The Maricopa County Superior Court of The State of Arizona and for the County of Maricopa

**CERTIFICATE OF SERVICE**

TDBBS, LLC

                Plaintiff,

VS.

Timothy Fabits

                Defendant,

Case No: **CV2018-012466**

State of Arizona
County of Maricopa } ss.

The Affiant, declares under penalty of perjury, that I am fully qualified, pursuant to Rule 4(d), Arizona Rules of Civil Procedure, to serve process in this cause in or for the State of Arizona and that the foregoing is true and correct.

On 9/28/2018, I received from Thorpe Shwer, P.C. the Summons, Complaint; Certificate on Compulsory Arbitration; Plaintiff's Demand for Jury Trial.

On 9/30/2018, at 11:48 AM, I served the aforementioned documents on: Timothy Fabits at 20907 W. Western Dr., Buckeye, AZ 85396 in the manner set below:

By substitute serving true copies upon: Melissa Fabits - Wife, who is of suitable age and discretion and residing therein at the usual place of abode.

The description of the person actually served is as follows: Gender: Female Race: Caucasian Age: 55-65 Height: 5'6" Weight: 145 Hair: Brown Eye Color: N/A Other:

Marriage Status: N / A

Military Status: N / A

Additional Comments: Timothy Fabits is married to Melissa Fabits.

X 

**Andres Lozano, 7822,** Affiant
Date: 10/1/2018
Registered in Maricopa
Work Order Number: P164550
Client Reference: **83643.001**

| | | |
|---|---|---|
| Service of Process - Rush | | 110.00 |
| | Total: | **$ 110.00** |



# EXHIBIT 3

**THORPE SHWER, P.C.**
William L. Thorpe (No. 005641)
André H. Merrett (020889)
Jamie Gill Santos (No. 026251)
3200 North Central Avenue
Suite 1560
Phoenix, Arizona 85012-2441
Telephone: (602) 682-6100
Email: wthorpe@thorpeshwer.com
Email: amerrett@thorpeshwer.com
Email: jsantos@thorpeshwer.com
Email: docket@thorpeshwer.com

**COPY**



SEP 2 8 2018

CHRIS DEROSE, CLERK
S. HUGHES
DEPUTY CLERK

**Attorneys for Plaintiff TDBBS, LLC**

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| TDBBS, LLC, a Delaware limited liability company, | Case No.: **CV 2018-012466** |
| Plaintiff, | **CERTIFICATE ON COMPULSORY ARBITRATION** |
| vs. | |
| TIMOTHY FABITS, an Arizona individual | |
| Defendant. | |

The undersigned certifies that he/she knows the dollar limits and any other limitations set forth by the local rules of practice for this Court, and further certifies that this case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

DATED this ____ day of September, 2018.

THORPE SHWER, P.C.

By _____
William L. Thorpe
André H. Merrett
Jamie Gill Santos
*Attorneys for Plaintiff TDBBS, LLC*

1

THORPE SHWER, P.C.

9051973

# EXHIBIT 4

**THORPE SHWER, P.C.**
William L. Thorpe (No. 005641)
André H. Merrett (020889)
Jamie Gill Santos (No. 026251)
3200 North Central Avenue
Suite 1560
Phoenix, Arizona 85012-2441
Telephone: (602) 682-6100
Email: wthorpe@thorpeshwer.com
Email: amerrett@thorpeshwer.com
Email: jsantos@thorpeshwer.com
Email: docket@thorpeshwer.com

**Attorneys for Plaintiff TDBBS, LLC**

**COPY**

SEP 2 8 2018

COURT SEAL

CHRIS DEROSE, CLERK
S. HUGHES
DEPUTY CLERK

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| TDBBS, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>  vs.<br><br>TIMOTHY FABITS, an Arizona individual,<br><br>        Defendant. | Case No.:  CV 2018-012466<br><br>**PLAINTIFF'S DEMAND FOR JURY TRIAL** |

Plaintiff by and through undersigned counsel, hereby demands a trial by jury in the above-captioned matter pursuant to Rule 38(b), Arizona Rules of Civil Procedure.

DATED this _23_ day of September, 2018.

THORPE SHWER, P.C.

By _____
William L. Thorpe
André H. Merrett
Jamie Gill Santos
*Attorneys for Plaintiff TDBBS, LLC*

1

9052021

# EXHIBIT 5

1   **THORPE SHWER, P.C.**
    William L. Thorpe (No. 005641)
2   André H. Merrett (No. 020889)
    Jamie Gill Santos (No. 026251)
3   3200 North Central Avenue
    Suite 1560
4   Phoenix, Arizona 85012-2441
    Telephone: (602) 682-6100
5   Email: wthorpe@thorpeshwer.com
    Email: amerrett@thorpeshwer.com
6   Email: jsantos@thorpeshwer.com
    Email: docket@thorpeshwer.com
7

8   **Attorneys for Plaintiff TDBBS, LLC**

9

10          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

11              **IN AND FOR THE COUNTY OF MARICOPA**

12   TDBBS, LLC, a Delaware limited liability       Case No.: CV 2 0 1 8 - 0 1 2 4 6 6
     company,
13
                    Plaintiff,
14
                                                    **SUMMONS**
     vs.
15                                                  If you would like legal advice from a lawyer,
     TIMOTHY FABITS, an Arizona individual,         contact the Lawyer Referral Service at
16                                                  602-257-4434
                    Defendant.                      or
17                                                  www.maricopalawyers.org
                                                    Sponsored by the
18                                                  Maricopa County Bar Association

19   THE STATE OF ARIZONA TO THE DEFENDANT:

20                          **Timothy Fabits**
                            **20907 W. Western Dr.**
21                          **Buckeye, AZ 85396**

22          YOU ARE HEREBY SUMMONED and required to appear and defend, within the time

23   applicable, in this action in this Court. If served within Arizona, you shall appear and defend

24   within 20 days after the service of the Summons and Complaint upon you, exclusive of the day

25   of service. If served out of the State of Arizona – whether by direct service, by registered or

26   certified mail, or by publication – you shall appear and defend within 30 days after the service

27   of the Summons and Complaint upon you is complete, exclusive of the day of service. Where

28   process is served upon the Arizona Director of Insurance as an insurer's attorney to received

                                                1

THORPE SHWER, P.C.

9052017

1    service of legal process against it in this State, the insurer shall not be required to appear, answer

2    or plead until expiration of 40 days after date of such service upon the Director.  Service by

3    registered or certified mail within the State of Arizona is complete 30 days after the date of

4    receipt by the party being served.  Service by publication is complete 30 days after the date of

5    first publication.  Direct service is complete when made.  Service upon the Arizona Motor

6    Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return

7    receipt or Officer's Return. ARCP 4; ARS §§ 20-222, 28-502, 28-503.

8            Copies of the pleading filed herein may be obtained by contacting the Clerk of Superior

9    Court, Maricopa County, located at 201 West Jefferson, Phoenix, Arizona 85003.

10           **YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend

11   within the time applicable, judgment by default may be rendered against you for the relief

12   demanded in the Complaint.

13           **YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer

14   or proper response in writing with the Clerk of this Court, accompanied by the necessary filing

15   fee, within the time required, and you are required to serve a copy of any Answer or response

16   upon the Plaintiff's attorney. ARCP 10(d); ARS § 12-311; ARCP 5.

17           Requests for reasonable accommodation for person with disabilities must be made to the

18   court by parties at least 3 working days in advance of a scheduled court proceeding.

19           Requests for an interpreter for persons with limited English proficiency must be made

20   to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in

21   advance of your scheduled court date.

22           The name and address of Plaintiff's attorneys, where a copy of the pleading being served

23   may be obtained, are:

**CHRIS DEROSE, CLERK**

24


25   William L. Thorpe
     André H. Merrett
     Jamie Gill Santos
     THORPE SHWER, PC
26   3200 North Central Avenue, Ste. 1560
     Phoenix, Arizona 85012

SEP 2 8 2018

27

28

2

S. Hughes
Deputy Clerk

9052017

THORPE SHWER, P.C.

# EXHIBIT 6

Skip To MainContent

[          ]  [ Search ]

Civil Court Case Information - Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2018-012466 | Judge: | Whitten, Christopher |
| File Date: | 9/28/2018 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| T D B B S, L L C | Plaintiff | | Andre Merrett |
| Timothy Fabits | Defendant | Male | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 10/10/2018 | AFS - Affidavit Of Service | 10/15/2018 | |
| **NOTE:** TIMOTHY FABITS | | | |
| 9/28/2018 | COM - Complaint | 10/1/2018 | |
| 9/28/2018 | CCN - Cert Arbitration - Not Subject | 10/1/2018 | |
| 9/28/2018 | CSH - Coversheet | 10/1/2018 | |
| 9/28/2018 | NJT - Not Demand For Jury Trials | 10/1/2018 | |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

# EXHIBIT 7

John J. Egbert – 011469
jegbert@jsslaw.com
Jimmie W. Pursell, Jr. - 19957
jpursell@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona  85004-2554
Telephone: (602) 262-5911
MinuteEntries@jsslaw.com

*Attorneys for Defendant Timothy Fabits*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TDBBS, LLC, a Delaware limited liability company, | No. |
| Plaintiff, | **VERIFICATION OF STATE COURT RECORD** |
| vs. | |
| Timothy Fabits, an Arizona individual, | |
| Defendant. | |

### DECLARATION OF JIMMIE W. PURSELL, JR.

JIMMIE W. PURSELL, JR. declares:

1.      Jimmie W. Pursell, Jr., having been duly sworn upon my oath, declare and state, under penalty of perjury, as follows:

2.      I am a Member of the law firm of Jennings, Strouss & Salmon, PLC, attorneys for Defendant Timothy Fabits.

3.      On September 28, 2018, Plaintiff TDBBS, LLC initiated the above-captioned case in the Maricopa County Superior Court of the State of Arizona, Case No. CV2018-012466 ("State Court Action").

4.      True and correct copies of all pleadings and other documents filed in the State Court Action are attached to the Notice of Removal as Exhibits 1-5.

5.      A true and correct copy of the Notice of Removal has been sent to the clerk of the court in the State Court Action, and written notice has been sent to Plaintiff's

6328764v1(68091.1)

counsel, at the same time that the Notice of Removal is being filed in this Court.

I verify under penalty of perjury that the foregoing is true and correct.

DATED this 26th day of October, 2018.

*s/ Jimmie W. Pursell, Jr.*
Jimmie W. Pursell, Jr.

6328764v1(68091.1)